STATE of Missouri, Respondent,

v.

Shirley LUTE, Appellant.

No. 63255.

Supreme Court of Missouri,
En Banc.

Nov. 9, 1982.

$40.00 and $13.00 interest and William F. Cal-houn $250.00 and $80.00 interest.

James G. Gregory, Montgomery City, for appellant.

John Ashcroft, Atty. Gen., John Jacobs, Neil MacFarlane, Asst. Attys. Gen., Jefferson City, for respondent.

SEILER, Judge.

Appellant was convicted of capital murder pursuant to § 565.001 RSMo 1977 Supp., in June, 1981, and sentenced to life imprisonment without eligibility of probation or parole for fifty years. This court has exclusive appellate jurisdiction pursuant to Art. V, § 3, Mo.Const. (as amended 1976). Appellant's first conviction for the offense was reversed by this court and remanded for a new trial. *State v. Lute,* 608 S.W.2d 381 (Mo. banc 1980).

Appellant alleges triple trial court error in instructing the jury. She attacks the court's failure to include the words "before or during" in Instruction No. 6, patterned after MAI–CR 2.14, modified by MAI–CR 15.02;[1] the court's refusal of her requested instruction "A";[2] and its refusal to give a first degree murder instruction.

Appellant does not question the sufficiency of the information or the sufficiency of the evidence. Therefore, a brief recitation of the facts will do. Between August, 1976 and January, 1978, appellant told several people she wanted her husband killed, proposing various methods of his disposal. On February 5, 1978, the day before appellant's husband Melvin Lute was murdered, appellant promised her son's wife $5,000 from the insurance proceeds if the wife could persuade him to kill Melvin Lute. Appellant then suggested to her son Roy Welch several ways to kill Lute, including throwing acid in his face, and a robbery scenario in which Roy would beat appellant and force her to open the safe in the trailer where he would murder his stepfather. On February 6, 1978, Melvin Lute was murdered, having died from knife wounds and gunshot wounds. Appellant told police an unidentified person had robbed and murdered her husband. Upon learning that her son Roy had been arrested and charged with the murder and after hearing his taped statement to the police, appellant changed her story. Continuing to deny any involvement in the robbery or murder, appellant stated she had lied to cover up for her son.

I

Reference to the notes on use following MAI–CR 2.14 supplies the answer to appellant's allegation that Instruction 6, *see* note 1, *supra,* was erroneously submitted. They refer the reader to MAI–CR 2.10, "Parties: General Responsibility for the Conduct of Others", which was submitted to the jury as Instruction 9.[3]

1. Instruction No. 6 read,

If you find and believe from the evidence beyond a reasonable doubt:

First, that on February 6, 1978, in the County of Monroe, State of Missouri, Roy Welch caused the death of Melvin Lute by shooting and cutting him, and

Second, that Roy Welch intended to take the life of Melvin Lute, and

Third, that Roy Welch knew that he was practically certain to cause the death of Melvin Lute, and

Fourth, that Roy Welch considered taking the life of Melvin Lute and reflected upon this matter coolly and fully before doing so, and

Fifth, that the defendant knowingly and intentionally aided or encouraged the person who engaged in the conduct submitted in the above paragraphs,

then you will find the defendant guilty of capital murder.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, then you must find the defendant not guilty of that offense.

2. Instruction A, based on § 556.180, RSMo 1969, read as follows:

A parent who has concealed her child after the commission of a felony or has given such child any other aid, knowing that such child has committed a felony, with the intent and in order that the child may escape or avoid arrest, trial, conviction or punishment is not guilty of any offense.

3. Instruction 9 read:

All persons are guilty who knowingly act together with the common purpose of committing an offense or who knowingly and intentionally aid or encourage another in committing it, and whatever one does in furtherance of the offense is the act of each of them.

The notes on use following MAI–CR 2.10 state that the instruction

> should be used where there is evidence (a) that defendant was an active participant in the crime or its attempt, even if he was not the principal actor, or (b) that defendant aided or encouraged other participants either before or during the crime or its attempt and was present or not . . .

Appellant was prosecuted on a theory of aiding and abetting, not as an accessory after the fact. The evidence therefore required that the court give Instructions 6 and 9. Read together, the instructions direct the jury to consider whether appellant participated in planning or carrying out the murder, the only charge for which she was prosecuted.

 Accordingly, the trial court also did not err in refusing to give appellant's Instruction A, a modification of § 556.180 RSMo 1969, "Accessories after the fact." The appellant was not charged with concealing her son after the felony or giving him aid toward escape. The tendered instruction did not meet the issue, whether appellant was guilty of having arranged her husband's murder. Neither appellant's argument nor the record before us persuade us that this instruction, inapplicable to the charge against her, should have been given.

## II

 Appellant urges prejudicial error in the trial court's refusal to instruct on first degree murder under § 565.006.1, RSMo Supp.1977.[4] The pattern instructions applicable at the time require that a trial court instruct on each degree of the offense only if justified by the evidence. MAI–CR 15.-00.3(d). At trial, appellant admitted lying to the police, but denied soliciting Roy or anyone else to murder her husband, denied assisting Roy in planning a decoy robbery

The presence of a person at or near the scene of an offense at the time it was committed is alone not sufficient to make her responsible therefor, although her presence may be considered together with all of the evidence in determining her guilt or innocence.

4. Section 565.006.1 RSMo Supp.1977 stated, in pertinent part,

scenario, denied telling Roy to hit her, and denied any knowledge that Roy would be in the trailer the night of the murder. Roy Welch's wife had testified that appellant had prompted Roy Welch to make it appear there had been a robbery, even suggesting that he "beat her up". Appellant at first told the police that an unknown assailant had murdered her husband, forced her to open the safe and hand over the $2,000 in cash, then bound and gagged her in the bedroom. Later appellant changed her story and told the police that on the evening of the murder she heard her husband yell her name, heard a glass break, and walked into the trailer and saw her son Roy leaning over her husband with a shotgun. She asked Roy what he had done, and he replied "Mother, I told you I needed money", and that he ordered her to open the safe. She insisted that she had nothing to do with what Roy did but that she was only trying to cover for him.

All of the evidence, therefore, was either to the effect that appellant had no part in the murder whatever, or, as to robbery, that appellant hoped to make it appear there was a robbery by some unknown person. Neither alternative tends to support the proposition that there was in fact a killing in the perpetration of a robbery. The court did not err in refusing to submit first degree felony murder.

The judgment is affirmed.

HIGGINS, GUNN and BILLINGS, JJ., concur.

DONNELLY, C.J., and RENDLEN and WELLIVER, JJ., concur in result.

"... the jury shall ... consider ... whether the defendant is guilty of capital murder, murder in the first degree, murder in the second degree, manslaughter, or is not guilty of any offense."

In the case at bar, the court instructed on capital murder, second degree murder and manslaughter.